**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

ANTHONY EMMETT
HAMILTON, JR.,

            **Petitioner,**

v.

TOMMY SHARP, Interim
Warden,[1]

            **Respondent.**

Case No. 22-CV-0434-SEH-SH

## OPINION AND ORDER

Petitioner Anthony Emmett Hamilton, Jr. ("Mr. Hamilton"), a self-represented Oklahoma prisoner,[2] petitions for a writ of habeas corpus, under 28 U.S.C. § 2254.  He challenges the lawfulness of his custody under the criminal judgment entered against him in Tulsa County District Court Case

---

[1] Mr. Hamilton presently is incarcerated at the Joseph Harp Correctional Center.  [ECF No. 11].  The Court therefore substitutes the interim warden of that facility, Tommy Sharp, in place of Scott Crow, as party Respondent.  Fed. R. Civ. P. 25(d); Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*.  The Clerk of Court shall note on the record this substitution.

[2] Because Mr. Hamilton appears without counsel, the Court liberally construes his filings.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the rule of liberal construction neither requires nor permits the Court to act as his advocate.  *Id.*; *see Childers v. Crow*, 1 F.4th 792, 798 (10th Cir. 2021) ("Although [the petitioner's] pro se petition before the district court is entitled to a liberal construction, we 'may not rewrite a petition to include claims that were never presented.'" (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999))).

No. CF-1996-5748, asserting three federal claims. Respondent urges the Court to dismiss the Petition, asserting that all three claims are barred by the one-year statute of limitations prescribed in 28 U.S.C. § 2244(d)(1). On consideration of the Petition [ECF No. 1], the Response [ECF No. 6], the Reply [ECF No. 8], the record of state court proceedings [ECF No. 7 and attachments to ECF No. 6], and additional materials submitted by Mr. Hamilton [attachments to ECF Nos. 1 and 8], and applicable law, the Court finds and concludes that the Petition shall be DISMISSED in part, as to claims one and two because both are untimely, and DENIED in part as to claim three because 28 U.S.C. § 2254(d) bars relief.[3]

## I. Background

In April 1997, a Tulsa County jury found Mr. Hamilton guilty of first-degree murder, after former conviction of two or more felonies, for fatally shooting Donald Bailey in a Tulsa motel room in October 1996 after the two men briefly argued. [ECF No. 6 at 21-30; ECF No. 7-3 at 67-69; ECF No. 6-1

---

[3] Mr. Hamilton requests an evidentiary hearing. [ECF No. 1 at 68]. The Court DENIES Mr. Hamilton's request for an evidentiary hearing, because the Court finds that the issues presented can be resolved without further development of the facts. Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*.

at 1][4]  Through its guilty verdict, the jury rejected Mr. Hamilton's theories of defense—presented through his own testimony, jury instructions, and closing argument—that the shooting was accidental and was justified as an act of self-defense.  [ECF No. 7-2 at 188-89, 191-97, 205, 214-35, 242-45, 254-73, 284-86; ECF No. 7-3 at 6-12, 14-16, 35-46].  The jury recommended a sentence of life with the possibility of parole, and the trial court sentenced Mr. Hamilton accordingly.  [ECF No. 7-3 at 68; ECF No. 6-1 at 3].  Mr. Hamilton appealed, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed his conviction and sentence in an unpublished summary opinion filed on September 11, 1998.  [ECF No. 6-2].

Mr. Hamilton twice applied for state postconviction relief.  He filed his first application on September 13, 1999, the state district court denied it on October 15, 1999, and Mr. Hamilton did not file a postconviction appeal. [ECF No. 6-3; ECF No. 6-5; ECF No. 1 at 5].  He filed his second application on November 9, 2017, the state district court denied it on November 5, 2021, Mr. Hamilton filed a postconviction appeal, and the OCCA affirmed on June 6, 2022.  [ECF Nos. 6-6, 6-8, 6-9].

Mr. Hamilton filed the Petition on October 5, 2022.  [ECF No. 1 at 1].

---

[4] For consistency, the Court's citations refer to the CM/ECF header pagination.

## II. Discussion

Mr. Hamilton asserts three federal claims that he presented to the OCCA through his postconviction appeal.  [ECF No. 1 at 5, 7, 8, 46, 48-68].

First, he claims he was deprived of his Sixth and Fourteenth Amendment rights to the effective assistance of appellate counsel, as interpreted in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Evitts v. Lucey*, 469 U.S. 387 (1985), because appellate counsel did not argue on direct appeal that trial counsel was ineffective "for failing to properly investigate the case, fail[ing] to solicit key testimony from a defense expert witness, & ma[king] statements about the evidence that were detrimental to his client."  [ECF No. 1 at 5, 48-51].  In support of this claim, Mr. Hamilton primarily points to perceived deficiencies in trial counsel's direct examination of two defense witnesses, Tara Moles ("Ms. Moles") and Jerome Smittle, and purportedly damaging statements trial counsel made during closing argument.  [*Id.* at 48-49].  He also alleges trial counsel did not adequately investigate the case when counsel did not honor Mr. Hamilton's request to obtain DNA testing of a black jacket that was introduced at trial as Defendant's Exhibit # 8 and identified by Ms. Moles as Mr. Bailey's jacket.  [*Id.*; *see* ECF No. 7-2 at 84-85, 98-99].

4

Second, he claims the State violated his Fourteenth Amendment right to due process, as interpreted in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959):  (1) by failing to disclose that a State witness, Greg Fillmore ("Mr. Fillmore"), "was a confidential police informant who lied to convict" a defendant in an unrelated federal case;[5] and (2) failing to correct false testimony from Mr. Fillmore and a second State witness, Tara Mizzell ("Ms. Mizzell").  [ECF No. 1 at 7, 52-60].  Mr. Hamilton alleges:  (1) that Mr. Fillmore "purposefully fabricated" his testimony that Mr. Hamilton pointed his gun at Mr. Bailey, "dry-fired" his pistol (i.e., pulled the trigger with no bullet in the chamber), then racked the slide of the pistol to load a bullet in the chamber and pointed the gun at Mr. Bailey a second time before fatally shooting him; (2) that Mr. Fillmore fabricated this testimony "because the police wanted him to embellish the story to possibly get the death

---

[5] In the unrelated federal case, the federal defendant was convicted in 1998 and sought postconviction relief in 2012, alleging his plea and sentence were obtained through fraud on the court. *United States v. Williams*, 16 F. Supp. 3d 1305 (N.D. Okla. 2014), *rev'd* 790 F.3d 1059 (10th Cir. 2016). Relevant to claim two, Mr. Fillmore testified at an evidentiary hearing held in 2012 in the *Williams* case:  (1) that he provided information to two local law enforcement officers about people he witnessed cooking or selling methamphetamine in the mid to late 1990s but that he was not a confidential informant for those officers; and (2) that he was pressured by different local law enforcement officers to lie to federal agents about knowing the federal defendant in *Williams* and about witnessing him manufacture methamphetamine. *Williams*, 16 F. Supp. 3d at 1310-12.  [*See also* ECF No. 1 at 73-80 (excerpt of Fillmore evidentiary hearing testimony); ECF No. 6-6 at 60-145 (full transcript of Fillmore evidentiary hearing testimony)].

penalty" for Mr. Hamilton; and (3) that Mr. Fillmore "pressured" Ms. Mizzell to falsely testify that Mr. Hamilton dry-fired his pistol before firing the fatal shot. [*Id.*] In support of claim two, Mr. Hamilton submits what he describes as newly discovered evidence, including: (1) an affidavit from Ms. Mizell, dated September 8, 2013 ("Mizzell Affidavit") stating, in part, that Mr. Fillmore "was working as an informant for certain law enforcement officials" and "pressured" Ms. Mizzell "to say the gun 'dry-fired' because [she] heard a click as [Mr. Hamilton] raised the gun" [ECF No. 1 at 70]; (2) an affidavit from Ms. Moles, dated September 9, 2013 ("2013 Moles Affidavit") stating, in part, that she "became aware" during Mr. Hamilton's trial that Mr. Fillmore "was working with police because [Mr. Fillmore] tried to convince [her] to say [Mr. Hamilton] aimed at [Mr. Bailey], pulled the trigger once to a dry fire and then he pulled the trigger again a second time, firing the fatal shot" when the "truth" was that Mr. Hamilton "raised the gun only once" [*id.* at 71-72]; (3) excerpts of Mr. Fillmore's testimony from the 2012 evidentiary hearing held in the *Williams* case [*id.* at 73-80]; (4) an affidavit from Ms. Moles, dated April 30, 2011 ("2011 Moles Affidavit") that was introduced in the *Williams* case and that states, in part, that Mr. Fillmore was "cooperating with police" and pressured her to lie at Mr. Hamilton's trial about whether Mr. Hamilton dry fired the pistol before he shot Mr. Bailey and that Mr. Fillmore later "pushed" her to introduce him to Mr. Williams [*id.* at 84]; and an affidavit

from Mr. Hamilton's mother, Donna Long ("Ms. Long"), dated August 18,

2014 ("2014 Long Affidavit"), providing a written dialogue of Ms. Long's

September 24, 2013, interview of another State witness, Kimberly Lane ("Ms.

Lane"), wherein Ms. Lane purportedly stated, in part, that there was no "dry

fire" or "misfire" before Mr. Hamilton fatally shot Mr. Bailey [*Id.* at 85-87;

ECF No. 6-6 at 149-53].[6]

Third, he claims he was deprived of his Fourteenth Amendment right to

due process when the State improperly exercised criminal jurisdiction to

prosecute him for murder because he is Indian and should have been

prosecuted in federal court for murder in Indian country, pursuant to the

Major Crimes Act, 18 U.S.C. § 1153(a) ("MCA").[7]  [ECF No. 1 at 8, 61-67].  In

---

[6] The copy of the 2014 Long Affidavit that Mr. Hamilton submitted to this Court is three pages, is neither signed nor notarized, and contains only a handwritten notation on the bottom of the first page indicating that the statement is a "(Notarized) (Copy of Original)."  [ECF No. 1 at 85-87]. However, the copy of the 2014 Long Affidavit that Respondent submitted as an attachment to Mr. Hamilton's second application for postconviction relief is five pages and is signed and notarized.  [ECF No. 6-6 at 149-53].  Both versions show that Ms. Lane refused to sign Ms. Long's written account of the 2013 interview.  [ECF No. 1 at 87; ECF No. 6-6 at 152-53].

[7] Under the MCA, only the federal government has jurisdiction to prosecute certain crimes, including murder, that are committed by Indians within "Indian country."  18 U.S.C. § 1153(a); *see McGirt v. Oklahoma*, 591 U.S. 894, 932 (2020) ("[T]he MCA applies to Oklahoma according to its usual terms:  Only the federal government, not the State, may prosecute Indians for major crimes committed in Indian country.")

support of this claim, Mr. Hamilton alleges that he is "1/8 Muscogee (Creek) Indian," that he became an enrolled member of the Muscogee (Creek) Nation in April 2018, and that the motel where he shot and killed Mr. Bailey is located within the boundaries of the Cherokee Nation Reservation.[8]  [*Id.* at 9, 61-67; ECF No. 8 at 1-2].

Respondent primarily contends that all three claims are barred by the statute of limitations and the Petition should be dismissed.  [ECF No. 6 at 6-17].  Respondent further contends that the state district court correctly denied relief on the merits as to claim three because Mr. Hamilton did not establish that he was recognized as Indian at the time of the murder, and that the state district court alternatively found claim three was procedurally barred, and the OCCA affirmed the denial of postconviction relief based on that same procedural bar.  [*Id.* at 4, 12-13 n.8].

---

[8] The *McGirt* Court held that because Congress did not disestablish the Muscogee (Creek) Nation Reservation the land within the boundaries of that reservation is Indian country, as defined in 18 U.S.C. § 1151(a), and, as a result, the federal government has exclusive jurisdiction, under the MCA, to prosecute certain crimes committed by Indians within those boundaries. *McGirt*, 591 U.S. at 913, 933-34.  The OCCA subsequently held that the Cherokee Nation Reservation is Indian country, as defined in § 1151(a). *Hogner v. State*, 500 P.3d 629, 635 (Okla. Crim. App. 2021), *overruled in part on other grounds by Deo v. Parish*, 541 P.3d 833 (Okla. Crim. App. 2023).

## A. Legal principles

A federal court may grant habeas relief to a state prisoner only if the prisoner shows that his custody violates (1) the United States Constitution, (2) federal law, or (3) treaties of the United States. 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (explaining that "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts"). The habeas statutes, as amended by provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the United States Supreme Court's interpretation of those provisions tightly constrain a federal court's discretion to grant relief. Two specific constraints are relevant here: the statute of limitations and the procedural default doctrine. Beyond specific constraints, a federal habeas court is statutorily obligated to "dispose of the matter as law and justice require." 28 U.S.C. § 2243; *see also Brown v. Davenport*, 596 U.S. 118, 134 (2022) (noting that "even a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief").

### 1. Statute of limitations

In most cases, a state prisoner must file a federal habeas petition, asserting federal claims challenging the validity of a state criminal judgment,

within one year of the date his state criminal judgment becomes final.  28

U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).  In some

cases, a state prisoner can show that some later occurring event triggered the

commencement date for the limitations period.  28 U.S.C. § 2244(d)(1)(B)-(D).

Different claims raised in the same petition may have different triggering

events and, thus, differently commencing limitations periods.  *See*

*Prendergast v. Clements*, 699 F.3d 1182, 1187 (10th Cir. 2012) (explaining

that "§ 2244(d)(1) should be applied on a claim-by-claim basis").

Regardless of which event triggers the commencement of the limitations

period, that period is tolled for "[t]he time during which a properly filed

application for State post-conviction or other collateral review with respect to

the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).

Statutory tolling applies only if a petitioner seeks postconviction relief or

other collateral review in state court of the pertinent judgment or claim

before the applicable federal limitations period expires.  *Clark v. Oklahoma*,

468 F.3d 711, 714 (10th Cir. 2006).  In addition, because the statute of

limitations is not jurisdictional, a court may toll the limitations period for

equitable reasons, *Holland v. Florida*, 560 U.S. 631, 645 (2010), and may

excuse noncompliance with the limitations period based on "a credible

showing of actual innocence," *McQuiggin v. Perkins*, 569 U.S. 383, 386, 392 (2013).[9]

## 2. Procedural default doctrine

Ordinarily, a state prisoner must exhaust available state remedies, before filing a federal habeas petition, by fairly presenting the substance of his federal claims to the highest state appellate court in accordance with applicable state procedural rules. 28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state

---

[9] In the Petition, Mr. Hamilton invokes equitable tolling but does not present any discernible actual innocence claim. [ECF No. 1]. Respondent nonetheless generously construes the Petition's references to "newly discovered evidence" (i.e., the evidence Mr. Hamilton submits in support of claim two) as asserting an actual innocence claim and argues in the Response that Mr. Hamilton's actual innocence claim is not credible. [ECF No. 6 at 20-39]. Unsurprisingly, Mr. Hamilton argues in his Reply that he does present a credible actual innocence claim. [ECF No. 8 at 3-6]. As previously noted, this Court must liberally construe Mr. Hamilton's pleadings, but it may not read the Petition as including claims that Mr. Hamilton did not make. *See supra* n. 2. And this Court is not bound by Respondent's generous construction of the Petition as including an actual innocence claim that Mr. Hamilton did not contemplate until Respondent invited him to do so. The Court therefore does not further address the parties' arguments regarding an actual innocence claim that is not found in the Petition.

courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

When a state prisoner properly exhausts available state remedies before seeking federal habeas relief, the scope of federal habeas review is determined by the way the state court disposed of the federal claim. If the state court adjudicated the federal claim on the merits, a federal court "shall not" grant a petition for writ of habeas corpus unless the state prisoner shows that the state court's adjudication of the federal claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). And, in making either showing, the petitioner must present "clear and convincing evidence" to overcome the presumption of correctness that attaches to any relevant factual findings made by the state court. *Id.* § 2254(e)(1).

However, if the state court applies an adequate and independent state procedural rule to deny relief on the federal claim, that claim is procedurally defaulted for purposes of federal habeas review. *Davila v. Davis*, 582 U.S. 521, 527 (2017). A federal court may not review a procedurally defaulted

claim "unless the prisoner can demonstrate cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Under the miscarriage of justice exception, a claim of "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *Perkins*, 569 U.S. at 386.

**B. Analysis**

Respondent primarily contends Mr. Hamilton has not shown that his claims are timely under any provision of § 2244(d)(1) or that equitable tolling is warranted. [ECF No. 6 at 7-19]. Respondent also suggests that claim three is procedurally defaulted because the OCCA denied relief on procedural grounds and that § 2254(d) precludes relief because the state court reasonably determined claim three lacks merit. [*Id.* at 4, 12-13 n.8]. Mr. Hamilton does not address the timeliness of claim one, but he contends § 2244(d)(1) does not apply to claims two and three and further contends that if it does apply, claims two and three are timely under § 2244(d)(1)(D) or should be deemed timely through equitable tolling. [ECF No. 1 at 7, 13-14, 52, 56, 59, 67; ECF No. 8 at 1-3]. In addition, Mr. Hamilton contends the state

district court erred in finding he was not Indian and the OCCA erred when it applied a procedural bar to deny claim three.  [ECF No. 1 at 61-67].

### 1. Section § 2244(d)(1) applies to all three claims.

Mr. Hamilton makes two arguments in support of his position that § 2244(d)(1) does not apply to claims two and three.  The Court rejects both.

First, Mr. Hamilton contends § 2244(d)(1) does not apply to claim two because his allegations in support of that claim demonstrate that his state criminal judgment was obtained through "fraud on the court" and a judgment so obtained cannot be considered a final judgment subject to a statute of limitations.  [ECF No. 1 at 14, 52, 59].  For support, Mr. Hamilton cites *Hazel-Atlas Glass Company v. Hartford Empire Company*, 322 U.S. 238 (1944), *Kenner v. Commissioner of Internal Revenue*, 387 F.2d 689 (7th Cir. 1968), and *United States v. Buck*, 281 F.3d 1336 (10th Cir. 2002).  [*Id.* at 59].

As Respondent contends, Mr. Hamilton's allegations in support of claim two do not implicate the "fraud on the court" doctrine. [ECF No. 6 at 11-12]. The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has previously explained why this is so:

> Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.  It has been held that allegations of nondisclosure in pretrial discovery will not support

14

an action for fraud on the court . . . It is thus fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function—thus where the impartial functions of the court have been directly corrupted.

*Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1266 (10th Cir. 1995) (quoting *Bulloch v. United States*, 763 F.2d 1115, 1118 (10th Cir. 1985) (*en banc*), and noting that *Bulloch* "summarized the nature of 'fraud on the court' in light of *Hazel–Atlas* and other cases"). Contrary to Mr. Hamilton's argument, claim two does not implicate the "fraud on the court" doctrine and claim two is not exempt from § 2244(d)(1)'s one-year limitations period.

Second, Mr. Hamilton contends § 2244(d)(1) does not apply to claim three because a judgment issued by a court without subject matter jurisdiction is "void ab initio" and thus cannot be considered a final judgment. [ECF No. 1 at 14, 66]. The Tenth Circuit previously has considered and rejected this argument. *See Pacheco v. Habti*, 62 F.4th 1233, 1245 (10th Cir. 2023) ("When Congress enacted the limitations period in AEDPA, it discerned no reason to provide a blanket exception for jurisdictional claims."); *Lamarr v. Nunn*, No. 22-6063, 2022 WL 2678602, at *2 (10th Cir. July 12, 2022) (unpublished)[10] (rejecting as "meritless" habeas petitioner's claim "that because the state trial

---

[10] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1; 10th Cir. 32.1.

court lacked jurisdiction to convict him . . . his conviction was never 'final' and therefore, [§ 2244(d)(1)'s] time limitations period does not apply and cannot bar his habeas petition"); *Murrell v. Crow*, 793 F. App'x 675, 679 (10th Cir. 2019) (dismissing as untimely habeas petitioner's claim that state court lacked jurisdiction to prosecute him).  So, like any due process claim, Mr. Hamilton's claim that the State's unlawful exercise of criminal jurisdiction in Indian country deprived him of due process is subject to § 2244(d)(1)'s one-year statute of limitations.

### 2. All claims are untimely under § 2244(d)(1)(A).

It is not apparent from the Petition or the Reply that Mr. Hamilton contends any claims are timely under § 2244(d)(1)(A).  [ECF Nos. 1, 8]. However, because he identifies no other provision that might apply to claim one, the Court briefly addresses whether any claims might be timely under § 2244(d)(1)(A) and concludes that no claims are timely under this provision.

Section 2244(d)(1)(A)'s limitations period commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A). Mr. Hamilton's judgment became final on December 10, 1998, when the time expired for him to seek further direct review by filing a petition for writ of certiorari in the Supreme Court.  *Gonzalez*, 565 U.S. at 150.  His limitations

period commenced the next day, December 11, 1998.  *See United States v. Hurst*, 322 F.3d 1256, 1261 (10th Cir. 2003) (holding "that calculation issues concerning the AEDPA statute of limitations should be resolved under the principles expressed in [Federal Rule of Civil Procedure] 6(a)); Fed. R. Civ. P. 6(a)(1)(A) (providing that computation of period stated in days or longer excludes the day of the event that triggers the period).  On September 13, 1999, after the limitations period ran for 277 days, Mr. Hamilton tolled the limitations period by filing his first application for postconviction relief.  28 U.S.C. § 2244(d)(2).  The state district court denied this application on October 15, 1999, and Mr. Hamilton's limitations period resumed running on November 16, 1999, the day after his time expired to file a postconviction appeal.  *Gibson v. Klinger*, 232 F.3d 799, 804 (10th Cir. 2000); *see* Okla. Stat. tit. 22, 1087 (1991); Fed. R. Civ. P. 6(a)(1)(A).  At that point, Mr. Hamilton had eighty-eight days, or until February 14, 2000, to file a federal habeas petition.[11]  He filed the Petition more than two decades after this deadline expired.  And his second application for postconviction relief did not toll this limitations period because he filed it in November 2017, more than a decade after this limitations period expired.  *Clark*, 468 F.3d at 714.  All three claims

---

[11] Mr. Hamilton's limitations period under § 2244(d)(1)(A) would have expired on February 12, 2000, a Saturday, so he had until the following Monday, February 14, 2000, to file a timely habeas petition.  Fed. R. Civ. P. 6(a)(1)(C).

are untimely under § 2244(d)(1)(A).  And, while Mr. Hamilton identifies a later commencement date for claims two and three under § 2244(d)(1)(D), he does not suggest that claim one might be timely under any other provision of § 2244(d)(1).  [ECF Nos. 1, 8].[12]  So, absent any basis for equitable tolling, the Court will dismiss the Petition as to claim one.

### 3. Claim two is untimely under § 2244(d)(1)(D).

Mr. Hamilton contends claim two is timely under § 2244(d)(1)(D).  [ECF No. 1 at 7, 13-14; ECF No. 8 at 2-3].  Respondent disagrees.  [ECF No. 6 at 8-11].  The Court finds that claim two is untimely.

Under § 2244(d)(1)(D), the one-year statute of limitations commences on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  Section 2244(d)(1)(D)'s due-diligence requirement is an objective standard that requires a federal court to consider when a reasonably diligent petitioner could have discovered the factual predicate of

---

[12] Respondent addresses whether any claims are timely under § 2244(d)(1)(B) or (d)(1)(C).  [ECF No. 6].  But the Court does not read Mr. Hamilton's arguments as suggesting that either of these provisions provide a later commencement date for any of his claims.  [ECF Nos. 1, 8].  The Court therefore limits its analysis to whether claim one is timely under § 2244(d)(1)(A) and whether claims two and three are timely under (d)(1)(D).

the claim, not when the petitioner asserting the claim actually discovered the factual predicate of the claim. *Madrid v. Wilson*, 590 F. App'x 773, 776 (10th Cir. 2014). And the focal point of § 2244(d)(1)(D) is when a reasonably diligent petitioner could have discovered the *facts* that are relevant to the claim, not when a reasonably diligent petitioner could have understood the *legal* significance of those facts. *See Klein v. Franklin*, 437 F. App'x 681, 684 (10th Cir. 2011) ("And while it is possible that [the petitioner] did not understand the legal significance of all these facts, the limitations period begins to run when the petitioner knows of the facts giving rise to the habeas claim; it is not required that he or she understand the legal significance of those facts."); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2001) (noting that, under § 2244(d)(1)(D), the limitations period "begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance").

Mr. Hamilton alleges the factual predicate of claim two "became reasonably obtainable only because of documents & transcripts in a related federal case [the *Williams* case] which were discovered by [Ms. Long] while researching [Mr. Hamilton's] case in the latter part of November, 2016." [ECF No. 1 at 52; *see also* ECF No. 8 at 2 (asserting Ms. Long discovered the *Williams* case in "late Nov. 2016")]. In support of this allegation, Mr.

Hamilton provides a second affidavit from Ms. Long, dated November 21, 2022 ("2022 Long Affidavit") wherein Ms. Long states that she is Mr. Hamilton's "sole outside advocate," that she found a news story about the *Williams* case "on Nov. 30, 2016," that she obtained the 2013 Moles Affidavit and the Mizzell Affidavit for Mr. Hamilton's 2013 parole hearing and has retained them in her file since that time, and that she did not believe Mr. Hamilton knew about these affidavits until November 2017 when an attorney filed his second application for postconviction relief. [ECF No. 8 at 10]. Mr. Hamilton thus contends claim two is timely because he presented it in state court through his second application for postconviction relief, filed November 9, 2017, within one year of Ms. Long's discovery of the *Williams* case. [*Id.* at 1-2, 10].

Respondent contends § 2244(d)(1)(D) does not provide Mr. Hamilton a later commencement date for claim two because a reasonably diligent petitioner could have discovered the factual predicate of that claim, at the latest, by the end of September 2013, when Ms. Long had obtained both the 2013 Moles Affidavit and the Mizzell Affidavit, because both affiants state that the affiants knew at the time of Mr. Hamilton's 1997 trial that Mr. Fillmore was working as an informant for certain law enforcement officials and that Mr. Fillmore had pressured them to falsely testify at Mr. Hamilton's

trial about Mr. Hamilton's dry fire of the pistol.  [ECF No. 6 at 8-12; *see* ECF No. 1 at 70-72].  Respondent further notes that the 2014 Long Affidavit recounts that Ms. Lane stated to Ms. Long on September 24, 2013, that "[t]here wasn't any dry fire or misfire" and "[i]t all happened too fast for [Mr. Hamilton] to have misfired or dry fired and then fire again."  [ECF No. 6 at 10; *see* ECF No. 1 at 85-87].  Respondent thus contends Mr. Hamilton had only until the end of September 2014 to file a timely habeas petition and claim two is untimely by roughly eight years.  [ECF No. 6 at 10-11].

On the record presented, it is not clear when Mr. Hamilton first learned from Ms. Long about the existence or contents of the Mizzell Affidavit and the 2013 Moles Affidavit, the substance of Ms. Long's 2013 interview of Ms. Lane, or Ms. Long's discovery of the *Williams* case.  Mr. Williams alleges "nobody outside the police/prosecution knew that [Mr.] Fillmore was a police informant until the *Williams* case," that Ms. Long discovered the *Williams* case in late November 2016, that Ms. Long did not inform him about that discovery until "mid December 2016," and that he had no knowledge of the Mizell Affidavit, the 2013 Moles Affidavit, or the 2011 Moles Affidavit until November 9, 2017, when his attorney filed his second application for postconviction relief.   [ECF No. 8 at 1-2].

Although this Court ordinarily must accept as true a petitioner's allegations in a verified pleading, this Court is not required to ignore portions of the record that contradict the petitioner's allegations. For two reasons, the Court finds that a petitioner exercising reasonable diligence could have discovered the factual predicate of claim two before Ms. Long's November 2016 discovery of the *Williams* case.

First, the trial transcripts show that the issue of whether Mr. Hamilton dry-fired his pistol before firing the fatal shot was thoroughly explored at Mr. Hamilton's 1997 trial. Mr. Fillmore testified, on direct and cross-examination, that Mr. Hamilton "dry fired" the pistol, racked the slide, then shot Mr. Bailey in the face. [ECF No. 7-1 at 44-45, 47, 57-58]. Ms. Mizzell testified, on direct examination, that she saw Mr. Hamilton pull out a pistol, heard a "click" but did not "know if [the pistol] jammed or what," saw Mr. Hamilton "rack[] it back," then heard a gunshot. [*Id.* at 86-87]. On cross-examination, defense counsel further inquired about the alleged "dry fire," and Ms. Mizzell again testified she heard a "click" and that the pistol may have "jammed or there was not a bullet in the first one or something." [*Id.* at 107-09]. She further testified that she saw Mr. Hamilton "pull the hammer back," or "pull back" what she described as "the top part of the gun that you pull back and click," before she heard the gunshot. [*Id.* at 109-11]. Ms. Lane

testified that she saw Mr. Hamilton with a pistol in his hand, turned her head away and covered her face with a pillow, and heard a gunshot. [*Id.* at 125-27]. Ms. Moles testified, as a defense witness, that she left the motel room before the shooting to sit inside a car parked just outside the open motel room door, that she could see Mr. Hamilton's back and that he had one hand raised, that she could see Mr. Bailey standing up in the motel room, and that she heard a gunshot. [ECF No. 7-2, at 74-80, 82-83, 94-97, 103-04]. Travis Nicholson ("Mr. Nicholson") testified, as a defense witness, that Mr. Hamilton was outside the motel room just before the shooting, that he walked out of the motel room as Mr. Hamilton walked into the room, that he "saw [Mr. Hamilton] pulling his gun out of his coat" as Mr. Hamilton walked into room, and that he heard a gunshot within seconds of leaving the motel room. [*Id.* at 116-21]. Mr. Hamilton testified at trial that he "racked" his pistol back "as soon as [he] pulled it out," and that Mr. Fillmore and Ms. Mizzell both were lying when they testified that they heard a "click" or a "dry fire" before he fired the fatal shot. [*Id.* at 268-69].

Second, the 2022 Long Affidavit refers to Mr. Hamilton's limited access to legal resources while incarcerated and speaks to Ms. Long's history of working as Mr. Hamilton's "outside advocate" to research his case and prepare and submit filings on his behalf. [ECF No. 8 at 10]. Ms. Long's

advocacy includes obtaining two affidavits in September 2013, from Ms. Mizzell and Ms. Moles, both of which contain statements indicating that these affiants knew *at the time of Mr. Hamilton's trial in 1997*, that Mr. Fillmore was a police informant and that he fabricated the dry-fire testimony, purportedly to appease police officers who wanted Mr. Hamilton to receive the death penalty for fatally shooting Mr. Bailey.  [*Id.*; ECF No. 1 at 70-72]. That advocacy also includes Ms. Long's effort to "track[] down and interview[]" Ms. Lane who, according to Ms. Long, effectively confirmed Ms. Moles's and Ms. Mizzell's statements that the dry-fire testimony was fabricated.  [ECF No. 8 at 10; ECF No. 1 at 85-87].  Lastly, that advocacy includes conducting internet research that led Ms. Long to her November 30, 2016, discovery of the *Williams* case and related documents, including the 2011 Moles Affidavit and the transcript of Mr. Fillmore's testimony from the 2012 evidentiary hearing in the *Williams* case.  [ECF No. 8 at 10].  Ms. Long's documented history of advocacy for Mr. Hamilton undermines his assertion that a reasonably diligent petitioner could not have discovered the factual predicate of claim two until late November 2016.

True, Ms. Long states that she did not discover the *Williams* case and documents related to that case until November 30, 2016.  But the affidavits she possessed in September 2013 directly contradict Mr. Hamilton's assertion

that "nobody outside the police/prosecution knew that [Mr.] Fillmore was a police informant until the *Williams* case." [ECF No. 8 at 1]. If those affidavits are to be treated as credible, Ms. Mizzell and Ms. Moles both knew *in 1997* that Mr. Fillmore was a police informant who not only fabricated the dry-fire testimony but also pressured both witnesses to perjure themselves at trial. At best, the November 30, 2016, discovery of the *Williams* case provided Mr. Hamilton with additional evidence to support claim two, but that does not mean the underlying facts of that claim were not reasonably discoverable until November 2016.

In any event, even accepting Mr. Hamilton's view that the factual predicate of claim two was not reasonably discoverable until November 30, 2016, claim two still is untimely. Using this date as the triggering date for his § 2244(d)(1)(D) limitations period, Mr. Hamilton had one year from December 1, 2016, to timely assert claim two in a federal petition. Fed. R. Civ. P. 6(a)(1)(A). On November 9, 2017, after this limitations period ran for 343 days, Mr. Hamilton tolled the limitations period by filing his second application for postconviction relief. 28 U.S.C. § 2244(d)(2). The limitations period resumed running on June 7, 2022, the day after the OCCA affirmed the denial of his second application for postconviction relief. Fed. R. Civ. P. 6(a)(1)(A). At that point, Mr. Hamilton had twenty-two days, or until June

29, 2022, to file a timely habeas petition.  He filed the instant petition on October 5, 2022, roughly three months after this deadline expired.  Thus, even calculating the limitations period with the discovery date Mr. Hamilton identifies, that claim is untimely under § 2244(d)(1)(D).  Absent a basis for equitable tolling, the Court will dismiss the Petition as to claim two.

### 4. Claim three may be timely under § 2244(d)(1)(D).

Mr. Hamilton contends claim three is timely under § 2244(d)(1)(D).  [ECF No. 1 at 14; ECF No. 8 at 1-2].  Respondent disagrees.  [ECF No. 6 at 14-15].

Mr. Hamilton alleges that he first discovered he is Native American in September 2017, when his mother, Ms. Long, revealed to him for the first time that the man he believed to be his father is not his biological father and that his biological father is Native American.  [ECF No. 1 at 14; ECF No. 8 at 1-2].  He thus contends that claim three is timely under § 2244(d)(1)(D) because he presented it in state court through the second application for postconviction relief he filed on November 9, 2017, roughly two months after he discovered the factual predicate of his Indian country jurisdiction claim.  [*Id.*].  Respondent contends that § 2244(d)(1)(D) does not apply to claim three "because, accepting Petitioner's allegations as true, he nonetheless could have discovered his Indian bloodline through the exercise of due diligence."  [ECF No. 6 at 12-17].

Ordinarily, § 2244(d)(1)(D) does not govern the limitations period for a *McGirt*-based claim. *See Owens v. Whitten*, No. 22-5106, 2022 WL 17972141, at *1 (10th Cir. Dec. 28, 2022) (unpublished) (noting that Tenth Circuit precedent "make[s] clear" that "the one-year limitations period set out in § 2244(d)(1)(A), rather than the ones set out in § 2244(d)(1)(C) and/or (D), applies to *McGirt*-based challenges to the validity of state convictions"). However, under the unique facts alleged in this case, the Court finds that even a reasonably diligent petitioner could not have discovered his Native American heritage when he had no reason to suspect that the man he knew as his father was not his biological father, much less any reason to suspect that his biological father is Native American. The Court thus finds that claim three could be timely under § 2244(d)(1)(D) on the facts alleged. But the Court finds it unnecessary to decide whether claim three is, in fact, timely under § 2244(d)(1)(D) because, as Respondent notes, this claim could be denied under either the procedural default doctrine or under § 2254(d).

As for the procedural default, the OCCA affirmed the denial of postconviction relief as to claim three by applying its decision in *State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021). [ECF No. 6-9 at 2-3]. In *Wallace*, the OCCA "exercise[ed] [its] independent state law authority to interpret the remedial scope of the state post-conviction statutes" and held

that the *McGirt* Court "announced a new rule of criminal procedure" and that

neither the *McGirt* decision nor the OCCA's post-*McGirt* decisions

recognizing the continued existence of reservations in Oklahoma "apply

retroactively in a state post-conviction proceeding to void a final conviction."

*Wallace*, 497 P.3d at 688-89, 694.  The state district court reasoned that

*Wallace* precluded relief because Mr. Hamilton's conviction became final in

1998.  [ECF No. 6-8 at 9-10].  The OCCA agreed and declined Mr. Hamilton's

invitation to "reexamine" the *Wallace* decision.  [ECF No. 6-9 at 2-3].  Some

federal district judges in Oklahoma have concluded that the *Wallace* rule is

an independent and adequate procedural rule that, when applied to a federal

claim challenging the state's allegedly improper exercise of criminal

jurisdiction in Indian country, results in a procedural default of that federal

claim.  *See July v. Tinsley*, Case No. 22-CV-0393-GKF-CDL, 2025 WL

2700111 (N.D. Okla. Sept. 19, 2025) (slip copy); *Patterson v. Harpe*, No. 18-

CV-0153-GKF-JFJ, 2025 WL 1908975, at \*16 (N.D. Okla. July 10, 2025) (slip

copy); ECF No. 19-1, *Fitzer v. Hamilton*, No. CIV-18-283-RAW-GLJ (E.D.

Okla. Jan. 2, 2025) (unpublished).  In this case, Respondent points out that

the OCCA applied the *Wallace* rule to deny relief as to claim three, but

Respondent primarily urges the Court to dismiss claim three as procedurally

barred by the statute of limitations and does not present a developed

argument that claim three is procedurally defaulted.[13]  For his part, Mr. Hamilton primarily argues that *Wallace* was wrongly decided.  [ECF No. 62-66].  Because neither party squarely addresses whether the *Wallace* rule operates in this case as an independent and adequate state procedural rule that renders claim three procedurally defaulted, the Court declines to decide that question.  And, as discussed next, even if the Court assumes claim three is procedurally defaulted and further assumes that Mr. Hamilton could make any of the showings necessary to overcome the procedural default, the Court finds that § 2254(d) bars relief.

As Respondent contends, the state district court correctly found, as a matter of law and fact, that Mr. Hamilton did not establish that he is Indian for purposes of invoking federal criminal jurisdiction under the MCA. Because the relevant federal statutes do not define the term "Indian," federal courts apply a two-part test to determine if a criminal defendant is Indian for purposes of federal criminal jurisdiction under the MCA.  That test requires a court to "make factual findings that the defendant '(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government.'"

---

[13] The lack of any developed argument as to whether claim three is procedurally defaulted is understandable given this court's directive to Respondent to file a limited response addressing the timeliness of Mr. Hamilton's claims.  [ECF No. 3].

*United States v. Prentiss*, 273 F.3d 1277, 1280 (10th Cir. 2001) (quoting

*Scrivner v. Tansy*, 68 F.3d 1234, 1241 (10th Cir. 1995)).  And to satisfy

*Prentiss*'s recognition prong, the defendant must have been "recognized as an

Indian at the time of the charged offense."  *United States v. Hatley*, 153 F.4th

1112, 1123 (10th Cir. 2025); *accord United States v. Zepeda*, 792 F.3d 1103,

1113 (9th Cir. 2015) (*en banc*) (holding that "the government must prove that

the defendant was an Indian at the time of the offense with which the

defendant is charged" to establish Indian status for purposes of federal

prosecution under the MCA).

Here, the state district court made four factual findings relevant to claim

three:  (1) Mr. Hamilton was not a citizen of the Muscogee (Creek) Nation on

the date of the offense, October 24, 1996; (2) Mr. Hamilton became enrolled

as a citizen of the Muscogee (Creek) Nation on April 5, 2018; (3) Mr.

Hamilton has some degree of Indian blood; and (4) Mr. Hamilton committed

the offense with in the Muscogee (Creek) Nation Reservation and/or the

Cherokee Nation Reservation.  [ECF No. 6-8 at 3].  Whether this Court

reviews claim three under § 2254(d) or de novo, this Court must presume

these factual findings are correct unless Mr. Hamilton rebuts that

presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*Simpson v. Carpenter*, 912 F.3d 542, 563 (10th Cir. 2018).  Mr. Hamilton has

not done so here.  He does not dispute the state district court's factual findings regarding the date of his enrollment as a tribal citizen, that he has some degree of Indian blood, or that he committed his crime in Indian country.  [ECF No. 1 at 61-62].

Instead, Mr. Hamilton appears to contend that the state district court unreasonably determined the facts and unreasonably applied the law when it concluded that he did not satisfy *Prentiss*'s recognition prong in 1996 when he committed his offense.  [ECF No. 1 at 62].  Mr. Hamilton is correct that that his lack of formal enrollment as a tribal citizen until 2018 does not necessarily preclude a finding he satisfied *Prentiss*'s recognition prong.  In addition to formal tribal enrollment, courts consider three other "core factors," namely, "government recognition formally and informally through receipt of assistance reserved only to Indians . . . enjoyment of the benefits of tribal affiliation . . . and social recognition as an Indian through residence on a reservation and participation in Indian social life." *United States v. Drewry*, 365 F.3d 957, 961 (10th Cir. 2004), *vacated on other grounds by Drewry v. United States*, 543 U.S. 1103 (2005); *see also Parker v. State*, 495 P.3d 653, 665-67 (Okla. Crim. App. 2021) (stating "[i]t is settled law that a person may be an Indian for purposes of federal criminal jurisdiction even if he or she is not formally enrolled in any tribe" and citing "four core factors" from *Drewry*).

The problem for Mr. Hamilton is that the state district court found, based on the evidence he presented in state court, that Mr. Hamilton was not formally enrolled in a tribe at the time of his offense (a fact he does not dispute) and that he "failed to provide any evidence related to [the remaining *Drewry*] factors, indicating that he had any affiliation with or involvement with the Muscogee (Creek) Nation at the time of the offense." [ECF No. 6-8 at 6-7]. And Mr. Hamilton essentially confirms the reasonableness of this finding by asserting that claim three is timely because even he did not recognize that he was eligible for citizenship in the Muscogee (Creek) Nation until September 2017. [ECF No. 1 at 14, 66; ECF No. 8 at 1-2].

Further, despite his acknowledgement that he did not know anything about his Indian status until 2017, Mr. Hamilton appears to contend the state district court unreasonably applied federal law by concluding that he did not satisfy the recognition prong because: (1) he has lived in Tulsa his whole life and, after *McGirt*, that means he has always lived on an Indian reservation (i.e., the fourth *Drewry* factor); and (2) the federal government recognized him as Indian in 1978 when it defined the phrase "Indian Child," for purposes of the Indian Child Welfare Act, 25 U.S.C. § 1901 et seq., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the

32

biological child of a member of an Indian tribe," 28 U.S.C. § 1903(4).  [ECF No. 1 at 62].  It is not apparent from the record that Mr. Hamilton made either of these arguments in state court.  But even if he had, this Court is not persuaded that the state district court's merits adjudication of claim three resulted in a decision that is either contrary to or based on an unreasonable application of clearly established Federal law.  The state district court acknowledged that tribal enrollment was only one of the four factors relevant to consideration of whether he satisfied the recognition prong, found no evidence that he satisfied any of the four factors, and, consistent with *Hatley*, considered Mr. Hamilton's alleged Indian status as of the time of his offense.  [ECF No. 6-8 at 3-6].

In short, the state district court reasonably determined, as a matter of fact and a matter of law, that Mr. Hamilton did not establish that he satisfied *Prentiss*'s recognition prong in 1996.  Thus, regardless of whether claim three is untimely or procedurally defaulted and regardless of whether Mr. Hamilton could overcome these procedural barriers, § 2254(d) bars relief.  The Court therefore will deny the Petition as to claim three.

### 5. Equitable tolling

Because claims one and two are untimely, the Court must consider Mr. Hamilton's argument that equitable tolling is warranted.  Mr. Hamilton

contends equitable tolling is warranted because his correctional facility was "on lockdown since July 6, 2022" and he was housed in restrictive housing (for non-disciplinary reasons) and thus denied physical access to the law library. [ECF No. 1 at 47].[14] Respondent contends that Mr. Hamilton has not shown that equitable tolling is warranted. [ECF No. 6 at 17-19].

Respondent has the better argument. "[E]quitable tolling is available for § 2244(d)(1)'s statute of limitations 'in rare and exceptional circumstances.'" *Bickham v. Allbaugh*, 728 F. App'x 869, 871 (10th Cir. 2018) (quoting *York v. Galetka*, 314 F.3d 522, 527 (10th Cir. 2003)). A habeas petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (cleaned up). Even assuming without deciding that a prison lockdown of unspecified duration qualifies as an extraordinary circumstance, this does not provide Mr. Hamilton a basis for equitable tolling because the lockdown he identifies occurred decades after

---

[14] In addition to the prison lockdown, Mr. Hamilton appears to contend that additional "extraordinary circumstances," namely, his belated discovery of his Native American heritage and *McGirt*'s recognition that Oklahoma improperly exercised jurisdiction in Indian country for decades, support equitable tolling as to claim three. [ECF No. 1 at 67]. But, as just discussed, claim three does not provide a basis for federal habeas relief even if it could be deemed timely. The Court thus addresses only Mr. Hamilton's argument that the prison lockdown supports equitable tolling.

his one-year deadline under § 2244(d)(1)(A) for claim one expired in February 2000, and just over one week after his one-year deadline under § 2244(d)(1)(D) for claim two expired on June 29, 2022, and thus could not have prevented him from filing a timely habeas petition asserting either claim. *See Bickham*, 728 F. App'x at 871 (rejecting petitioner's assertion that five-month lockdown and related lack of access to law library supported equitable tolling and reasoning that the lockdown "occurred long after the AEDPA statute of limitations expired").

Further, while Mr. Hamilton alleges that he lacked physical access to the law library, he does not allege either that he wholly lacked access to legal resources or that he lacked access to his own legal materials nor does he adequately explain how the lack of physical access to the law library could have prevented him from timely filing a petition asserting three claims that were fully briefed by his state postconviction counsel as of November 2017. *See, e.g.*, *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (noting that "the claims [the petitioner] sought to raise are similar to those raised in his direct appeal and motion for state postconviction relief, thereby undercutting his argument that lack of access" to legal resources prevented timely filing of a habeas petition and further noting that the petitioner "provided no specificity

35

regarding the alleged lack of access and the steps he took to diligently pursue his federal claims").

Because Mr. Hamilton does not identify any extraordinary circumstances that stood in his way and prevented him from timely filing the Petition, the Court finds no basis to deem claims one and two timely through equitable tolling.

### III. Conclusion

For the reasons stated, the Court concludes that § 2244(d)(1) bars relief as to claims one and two and § 2254(d) bars relief as to claim three. The Court therefore DISMISSES the Petition in part as to claims one and two and DENIES the Petition in part as to claim three. Further, the Court concludes that reasonable jurists would not debate either the procedural dismissal of claims one and two or the correctness of the denial of claim three and thus DENIES a certificate of appealability. *See* 28 U.S.C. §§ 2253(c), 2254(a); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (discussing standards for issuing certificate of appealability).

**IT IS THEREFORE ORDERED** that the Petition [ECF No. 1] is DISMISSED in part and DENIED in part; Mr. Hamilton's request for an

evidentiary hearing is DENIED; a certificate of appealability is DENIED;

and a separate judgment shall be entered in this matter.

**IT IS FURTHER ORDERED** that the Clerk of Court shall note on the

record the substitution of Tommy Sharp, Interim Warden, in place of Scott

Crow as party Respondent.

**IT IS SO ORDERED** this 23rd day of March, 2026.

_____

Sara E. Hill
UNITED STATES DISTRICT JUDGE